THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK M. BROWN, Defendant-Appellant.

Fourth District   No. 4—92—0250

Opinion filed October 15, 1992.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

On January 24, 1992, defendant, Mark M. Brown, appeared in Champaign County circuit court on two unrelated traffic charges. As a result of his behavior in court, the trial court found him to be in direct criminal contempt of court in each case and sentenced him for his contempt in each case to 180 days in the Champaign County Correctional Center, with each sentence to run consecutively to the other. On appeal, defendant challenges only the sentences, arguing (1) the trial court improperly convicted him of two counts of direct criminal contempt because each count was based on the same conduct; and (2) the trial court improperly imposed consecutive sentences.

We hold that the trial court erred in imposing consecutive sentences.

## I. BACKGROUND

The trial court filed written orders of direct criminal contempt in each case. Because those orders constitute the entire record of the events leading to the findings of contempt, we quote both orders in their entirety as follows:

*Champaign County Case No. 91—T—16517*

"This cause coming on for a sentencing hearing on January 24, 1992. The People were present by [an assistant State's Attorney]. The defendant was present along with his attorney ***. After the Court denied a Motion to Continue, the defendant was sentenced pursuant to his agreement in the above captioned cause to 21 days['] incarceration in the Champaign County Correctional Center with credit for four days heretofore served. The defendant was then remanded to the custody of the Sheriff and told to go with the Correctional Officer. The following occurred:

1. The defendant started walking away[ ] from the Court Officer as she was preparing recognizance bond papers in 92—T—1106.

2. The defendant was walking towards the door and the Court then yelled the defendant's name twice. While the Court was calling to the defendant, the Court heard the Court Officer also calling to the defendant.

3. The defendant flung open the courtroom door and ran.

4. The Court Officer chased the defendant but did not catch him.

5. The defendant was immediately held in direct criminal contempt of court.

Wherefore, the Court finds:

A. That the Court has jurisdiction over the subject matter and the parties hereto.

B. That the defendant was remanded to the custody of the Sheriff and told to go with the Correctional Officer.

C. That the defendant initially went with the Correctional Officer and then started to walk out of the courtroom[.]

D. That the Court called the defendant's name twice and the Court Officer also called the defendant's name but the defendant kept walking out of the courtroom.

E. That the defendant flung open the courtroom door and fled.

F. That the defendant's conduct was done with the intent to hinder the Court in its functions and to impede the administration of justice and to put the Court in disrepute.

G. That the defendant's actions were willful.

H. That the Defendant is in direct criminal contempt of court.

Wherefore, it is ordered that the defendant is in direct criminal contempt of court. The defendant is ordered incarcerated in the Champaign County Correctional Center to a term of 180 days consecutive to the 21[-]day sentence heretofore entered. Further, these two sentences are to be served consecutive[ly] to the 180[-]day[ ] direct criminal contempt of court sentence in 92—T—1106."

*Champaign County Case No. 92—T—1106*

"This matter having been called on an arraignment for the defendant on January 24, 1992. People were appearing by [an assistant State's Attorney] and the defendant appeared with appointed counsel ***. The defendant was arraigned on this cause and two companion tickets. At that time he was allowed to be released on his own recognizance, even though he had been sentenced and was remanded to the custody of the Sheriff in 91—T—16517. The Court then told the defendant to step to the back of the courtroom with the Court Officer and sign the bond papers prepared for him. The defendant stepped to the back of the courtroom with the Court Officer and then started

walking away. As the defendant neared the door, the Court yelled out his name twice. While the Court was calling the defendant's name, the Court heard the Court Officer also calling the defendant's name. The defendant flung the door open and ran. The Court Officer chased after the defendant. The Court Officer returned approximately 15 or 20 minutes later and she had not yet found the defendant. The Court finds as follows:

1. That it has jurisdiction of the subject matter[ ] and parties hereto.

2. That the defendant was told to step to the back of the courtroom with the Court Officer to sign the paperwork.

3. That the defendant did not sign the paperwork.

4. That the defendant moved towards the door and did not stop when the Court called his name twice. That the Court Officer was further calling to the defendant.

5. That the defendant left the courtroom and fled.

6. That the conduct was done by the defendant with the intent to hinder the Court in its functions and to impede the administration of justice and to put the Court in disrepute.

7. That the defendant[']s actions were willful.

8. That the defendant is in direct criminal contempt of court.

Wherefore, it is ordered that the defendant is in direct criminal contempt of court. That the defendant is sentenced to 180 days['] incarceration in the Champaign County Correctional Center consecutive to the Order of Contempt issued in 91—T—16517 and consecutive to any sentence imposed in 91—T—16517. Further, that this order of 180 days['] incarceration is to be served consecutive[ly] to any imprisonment that may be ordered if the defendant is found guilty in this cause, 92—T—1106.''

In February 1992, defendant filed a motion to reconsider sentence, which raised the same sentencing issues that defendant now raises on appeal. The trial court denied that motion.

## II. WAS EACH CONVICTION OF DIRECT CRIMINAL CONTEMPT BASED ON THE SAME PHYSICAL ACT?

Defendant first argues that the trial court improperly entered two convictions of direct criminal contempt because each charge was based on the same physical acts. Defendant claims that the trial court's findings reveal that each contempt is based on the same physi-

cal acts. Citing *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45, defendant maintains that this court cannot permit both contempt convictions to stand.

■ In response, the State cites *People v. Segara* (1988), 126 Ill. 2d 70, 77, 533 N.E.2d 802, 805, wherein the supreme court cited approvingly a law review article that analyzed various interpretations of the *King* decision and concluded as follows:

> " '[I]f a defendant commits more than one criminal act in an episode or transaction, he may be prosecuted for more than one offense unless the charges involve *precisely* the same physical act. [(Emphasis added.)] If the physical acts are distinct, the defendant can be convicted of both, but only concurrent sentences can be imposed. If exactly the same physical act does form the basis for more than one offense, a defendant may still be prosecuted for each offense, but only one conviction and sentence may be imposed.' Eisenberg, *Multiple Punishments for the 'Same Offense' in Illinois*, 11 S. Ill. U. L.J. 217, 236-37 (1987) [(hereinafter Eisenberg)]."

Following *Segara*, the State then argues as follows:

> "It is clear that there were two physical acts, each supporting and corresponding to a separate count of contempt. In No. 91—T—16517, the contemptuous act was failure to remain in custody of the correctional officer. In No. 92—T—1106, the contemptuous act was failure to sign the recognizance bond paperwork. Although these two acts were part of the same transaction, each was a separate physical act."

We agree with the State's position and find no error in the trial court's imposing two separate convictions for direct criminal contempt.

### III. Imposition Of Consecutive Sentences Of Six Months For Each Count Of Direct Criminal Contempt

■ Defendant next argues that the trial court erred in imposing consecutive sentences on each conviction of direct criminal contempt because each was based on a single course of conduct. In support of this argument, defendant cites section 5—8—4(a) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—4(a)), which provides in pertinent part as follows:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective ***."

In *People v. Willis* (1990), 204 Ill. App. 3d 590, 595, 561 N.E.2d 1376, 1379-80, this court discussed the term "conduct" as used in section 5—8—4(a) of the Code and wrote the following:

> "The term 'conduct' refers to an act or series of acts and the accompanying mental state. (Ill. Rev. Stat. 1987, ch. 38, par. 2—4.) Accordingly, *** the imposition of consecutive sentences depends upon both the existence of separate acts and separate motivation behind those acts."

In *Willis*, this court vacated in part a trial court's order imposing consecutive sentences for defendant's convictions of (attempt) escape and two counts of aggravated battery because all three convictions arose from the same motivation—escaping from the Vermilion County jail. (There, the consecutive term was vacated and defendant's term of imprisonment for (attempt) escape was ordered to be served concurrently with the sentences for aggravated battery.) We find *Willis* similar to the facts in the present case because, as in *Willis*, defendant here sought to escape from the court's jurisdiction as he ran from the courtroom. That motivation accounted both for his flight in disregard of the court's order of incarceration (in Champaign County case No. 91—T—16517) and his failure to sign the documents the court had ordered him to sign (in Champaign County case No. 92—T—1106). See also *People v. Parker* (1986), 141 Ill. App. 3d 643, 646, 490 N.E.2d 1076, 1078 (consecutive sentences modified to run concurrently where all of defendant's crimes occurred in a 10-minute time span, were confined to a limited area, and defendant did not demonstrate any change in his criminal intent); Eisenberg, 11 S. Ill. U. L.J. at 237 ("If the physical acts [a defendant commits during one episode or transaction] are distinct, the defendant can be convicted of both, but only concurrent sentences can be imposed").

■ In response to this argument, the State contends that section 5—8—4(a) of the Code does not apply to sentences imposed for criminal contempt. The State maintains that section 5—8—4(a) of the Code governs the imposition of consecutive sentences for *offenses* and that criminal contempts do not come within the definition of "offense," as defined in section 5—1—15 of the Code, which reads as follows:

> " 'Offense' means conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this State or by any law, local law or ordinance of a political subdivision of this State, or by any order, rule or regulation of any governmental instrumentality authorized by law to adopt the same." Ill. Rev. Stat. 1991, ch. 38, par. 1005—1—15.

We disagree with this argument and find it inconsistent with the decision of this court in *People v. Townsend* (1989), 183 Ill. App. 3d 268, 270, 538 N.E.2d 1297, 1299, wherein the court wrote that "[c]riminal contempt is a crime." (See also *People v. Siegal* (1948), 400 Ill. 208, 209, 79 N.E.2d 616, 617 (criminal contempt "is a crime against the court and against the people and is a misdemeanor").) In addition, the inherent authority of the Illinois judiciary to punish contemnors derives from article VI of the Constitution of 1970, which establishes the Illinois judiciary. (Ill. Const. 1970, art. VI.) Surely article VI of the State Constitution falls within the reference in section 5—1—15 of the Code to "any law of this State." (See Ill. Rev. Stat. 1991, ch. 38, par. 1005—1—15.) That a sentence of imprisonment or a fine is not *explicitly* provided in the constitution for contemnors does not matter; that the constitution provides the inherent authority for courts to sentence contemnors suffices, for purposes of section 5—1—15 of the Code, to deem criminal contempt an "offense."

We also believe that our construction of section 5—8—4(a) of the Code as applying to criminal contempts might be constitutionally required. In *In re Marriage of Betts* (1990), 200 Ill. App. 3d 26, 50, 558 N.E.2d 404, 420, this court wrote the following:

"When the aggregate punishments for a particular course of criminally contemptuous conduct committed in the presence of a judge exceed the parameters of punishments normally imposed for misdemeanors and the punishments are not imposed immediately after occurrence of the contemptuous conduct, the contemnor is entitled to a jury trial as to the contempt charges. (*Bloom* [*v. Illinois* (1968)], 391 U.S. [194,] 208-11, 20 L. Ed. 2d [522,] 533-34, 88 S. Ct. [1477,] 1486-87; *United States v. Seale* (7th Cir. 1972), 461 F.2d 345, 352-56.) The traditional test for determining whether or not a charged offense is a misdemeanor is whether the penalties exceed $500 or six months' imprisonment. (*Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444; *Baldwin v. New York* (1970), 399 U.S. 66, 70-71, 26 L. Ed. 2d 437, 441, 90 S. Ct. 1886, 1889; [citation].)"

In *Codispoti v. Pennsylvania* (1974), 418 U.S. 506, 41 L. Ed. 2d 912, 94 S. Ct. 2687, the United States Supreme Court considered a case in which the defendants were convicted of several separate charges of direct criminal contempt based on their conduct during the course of their criminal trial. For each contempt conviction, each defendant received individual sentences which did not exceed six months. However, the trial court ordered them served consecutively,

which aggregated them to approximately three years. The Supreme Court held that on these facts, the sixth amendment required a jury trial, and the Court explained its holding as follows:

"We find unavailing [the State's] *** argument that [defendants'] contempts were separate offenses and that, because no more than a six months' sentence was imposed for any single offense, each contempt was necessarily a petty offense triable without a jury. Notwithstanding [the State's] characterization of the proceeding, the salient fact remains that the contempts arose from a single trial, were charged by a single judge, and were tried in a single proceeding. The individual sentences imposed were then aggregated, one sentence taking account of the others and not beginning until the immediately preceding sentence had expired." *Codispoti*, 418 U.S. at 517, 41 L. Ed. 2d at 922, 94 S. Ct. at 2693-94.

Because defendant in the present case was not afforded a jury trial on his direct contempt convictions, the sixth amendment considerations discussed by the Supreme Court in *Codispoti* apply here as well. Thus, we construe section 5—1—15 of the Code as applying to criminal contempts because not doing so would risk violating the sixth amendment rights of contemnors.

## IV. Conclusion

■ For the reasons stated, we affirm the defendant's convictions for direct criminal contempt, vacate the consecutive sentences, and remand with directions that the trial court amend the sentencing orders to reflect that the 180-day sentences imposed for each conviction of direct criminal contempt be served concurrently to the other, though consecutive to the sentence imposed in case No. 91—T—16517, and the sentence (if any) imposed in No. 92—T—1106.

Convictions affirmed; sentences vacated, and cause remanded with directions.

GREEN, P.J., and COOK, J., concur.