RANDY FLOWERS, Plaintiff-Appellant and Cross-Appellee, v. THE CITY OF MOLINE, Defendant-Appellee and Cross-Appellant.

Third District   No. 3—93—0076

Opinion filed October 4, 1993.—Rehearing denied November 18, 1993.

Duane Thompson, of Braud/Warner, Ltd., of Rock Island (Walter D. Braud, of counsel), for appellant.

Jeffrey D. Lester, of Moline, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

The plaintiff, Randy Flowers, challenged the actions of the Moline city council, arguing that the city had attempted to change its form of government without complying with the requirements of the Illinois Municipal Code (65 ILCS 5/1—1—1 *et seq.* (West 1992)). The city moved to dismiss based on the plaintiff's lack of standing and the court's lack of authority to enjoin acts which were lawful and within the city's authority. The trial court held that the plaintiff had standing but that it could not enjoin the acts of the city. We affirm.

In June 1992, the Moline city council passed an ordinance which modified the powers and duties of the mayor, the city administrator and the city council. Specifically, the ordinance provided that the city council would appoint and remove the city administrator, that the mayor would appoint the members of the boards and commissions with the advice and consent of the city council and that the city administrator would appoint and remove the heads of city departments. On the same day, the city council passed a resolution which called for submitting the ordinance in question for a public referendum in November 1992.

Shortly before the election, the plaintiff filed a complaint for declaratory and injunctive relief, seeking to keep the proposed referendum off the ballot and to enjoin the city from enacting the challenged ordinance. The plaintiff argued that the effect of the ordinance is to change the form of city government from strong mayor form to managerial form. The city moved to dismiss, arguing that the plaintiff lacked standing to sue and that the complaint sought to enjoin public officials from acts that were lawful and within their authority.

The plaintiff appeals the court's decision that the city acted lawfully. The city cross-appeals on the issue of standing.

First we must address the issue of whether the plaintiff has standing to sue in this matter.

■ The purpose of the standing requirement is to assure sufficient sharpness in defining the issues before the court. (*Di Santo v. City of Warrenville* (1978), 59 Ill. App. 3d 931, 376 N.E.2d 288.) In order to possess standing, the plaintiff must prove (1) that he has suffered a distinct and palpable injury; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that the injury is substantially likely to be redressed by the grant of the requested relief. (*Immigration & Naturalization Service v. Chadha* (1983), 462 U.S. 919, 77 L. Ed. 2d 316, 103 S. Ct. 2764.) In the context of an action for declaratory relief, there must be an actual controversy between the parties

and the plaintiff must possess some personal claim or right that is capable of being affected by the court's decision. (*Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 524 N.E.2d 561.) An "actual" controversy is required to distinguish justiciable issues from hypothetical disputes; it is not meant to prevent resolution of concrete disputes. *Miller v. County of Lake* (1980), 79 Ill. 2d 481, 404 N.E.2d 222.

In *Kluk v. Lang* (1988), 125 Ill. 2d 306, 531 N.E.2d 790, the Illinois Supreme Court determined that the plaintiffs possessed standing to challenge the constitutionality of a statute by virtue of being residents and voters in the legislative district in question. In that case, the plaintiffs challenged the statutory scheme which allowed political party committees to fill legislative vacancies through appointment. The court held that the right to be represented through a lawfully established mechanism was possessed equally by all the members of the electorate and no other plaintiffs could bring the issues into sharper focus or bring a keener interest to the litigation.

█ In the case at bar, the right to be governed in a manner provided by statute and altered only according to law is shared equally by all residents and voters of the City of Moline. The plaintiff is one such resident and voter. No one could bring a keener interest to the controversy or sharpen the issues better than the plaintiff. Therefore, we hold that the plaintiff has standing to bring the suit at issue.

The next issue is whether the trial court erred in dismissing the plaintiff's complaint.

In 1961, the General Assembly adopted statutory guidelines which allowed cities and villages to elect the managerial form of government. (See 65 ILCS 5/5—1—1 *et seq.* (West 1992).) Subsequently, the 1970 Illinois Constitution was adopted which provided that certain municipalities could choose to be home rule units and gave home rule units the power to adopt, alter or repeal a form of government provided by law subject to approval by referendum. Ill. Const. 1970, art. VII, §§6(a), (f).

In *People ex rel. Hanrahan v. Beck* (1973), 54 Ill. 2d 561, 301 N.E.2d 281, the Illinois Supreme Court addressed the issue of whether a home rule unit may adopt an ordinance pursuant to its home rule powers and thereby supersede a statute antedating the present constitution. The court recognized that the 1970 Constitution was designed to drastically alter the relationship between local and State governments. While, previously, local governments had been limited to those powers expressly authorized, the new constitution allowed home rule units to exercise greater autonomy in the determina-

tion of their government and affairs. Thus, the court held that a home rule unit could supersede a statute enacted prior to the 1970 Constitution through the use of its home rule powers.

The case now before us presents the same scenario as considered in *Hanrahan*. The statutory provisions for adopting the managerial form of government had been in existence for nine years when the 1970 Constitution became effective. Therefore, the city was free to supersede the statute through the exercise of its home rule powers.

■ The plaintiff argues that the city must choose among various forms of government provided by statute without changing these forms. However, the constitution requires only that the forms of government be provided "by law." A city ordinance is "law" within the city. (*Archibald v. Board of Education* (1959), 19 Ill. App. 2d 554, 154 N.E.2d 867.) Thus, the city has chosen a form of government provided "by law." Further, if the plaintiff is correct in his interpretation, then the city may only "adopt" or "repeal" a form of government. If the city may not tailor its form of government to its own specific needs, the word "alter" as it appears in the 1970 Constitution has been rendered meaningless. Such an interpretation is contrary to the well-established rule that statutes must be read so as to give meaning to each word and phrase. (*Hirschfield v. Barrett* (1968), 40 Ill. 2d 224, 230, 239 N.E.2d 831 ("the fundamental rule that each word, clause or sentence must, if possible, be given some reasonable meaning [citations] is especially apropos to constitutional interpretation").) Thus we find that the city did not exceed its authority by altering its form of government, provided such change was approved by appropriate referendum.

The plaintiff argues that the proposition submitted at the referendum was vague and ambiguous because it did not advise voters that they were voting on whether to change the form of city government. Although we have already held that the city acted within its authority in altering its form of government, we find it appropriate to determine whether the proposition submitted to the voters was deficient.

In *Hoogasian v. Regional Transportation Authority* (1974), 58 Ill. 2d 117, 317 N.E.2d 534, the plaintiff attacked the sufficiency of the referendum which approved the establishment of the Regional Transit Authority. The court held that it is not necessary for the ballot to set forth details of the proposition to be voted upon or otherwise educate the voters on its merits. A sufficient ballot need only present the proposition in a manner that the voter has a clear opportunity to express his choice on the issue. Further, the proposition need not refer-

ence any source of information to which the voter might turn for assistance in making a decision on the issue.

■■ In the case at bar, the following proposition was submitted to the voters:

> "Shall certain powers of the Mayor, City Administrator, and City Council of the City of Moline, Illinois, be reassigned and transferred so that the City Council appoints and removes the City Administrator; the Mayor appoints members of the Boards and Commissions, with the advice and consent of the City Council; and the City Administrator appoints and removes the Department Heads of the City?"

This proposition clearly sets out the changes to be made in city government. It informs the voter of which functions are to be transferred and the party who will subsequently be responsible for those functions. Although the proposition contains no date on which these changes are to be made, neither did the proposition upheld in *Hoogasian*. We find that the proposition sufficiently informed voters of the changes upon which they were to cast their ballots.

In reviewing a motion to dismiss, the appellate court must accept all well-pleaded facts as true and determine whether any set of facts may be proved which would entitle the plaintiff to recovery. (*Toys 'R' Us, Inc. v. Adelman* (1991), 215 Ill. App. 3d 561, 574 N.E.2d 1328.) Based on the previous discussion, we hold that the plaintiff cannot allege a set of facts which would entitle him to relief. Therefore, the trial court did not err in dismissing the complaint.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

McCUSKEY, P.J., and STOUDER, J., concur.